# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E. SHAW, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | )   Case No. CIV-07-384-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|        Defendant. | ) |

## OPINION AND ORDER

The claimant James Shaw requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show he does not retain the residual functional capacity (RFC) to perform his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work he can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on December 17, 1968, and was 37 years old at the time of the most recent administrative hearing. He has a college degree and previously worked as a pumper/gauger and sewing machine operator. He alleges he has been unable to work since January 15, 2001, because of depression, anxiety, post-traumatic stress disorder (PTSD), psychotic episodes, panic attacks, osteoarthritis of the right hand, and status post right wrist surgery.

## Procedural History

On January 20, 2004, the claimant protectively filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. An ALJ conducted a hearing and found the claimant was not disabled; however, the Appeals Council vacated that decision and remanded it for further proceedings. ALJ Michael Kirkpatrick conducted a supplemental hearing and determined that the claimant was not disabled on April 3, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant retained the physical residual functional capacity ("RFC") to perform light work, *i. e.*, that he could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and "[could] not use his right (dominant) hand for repetitive handling." With regard to his mental restrictions, the ALJ determined the claimant could perform "simple, routine and, unskilled tasks" as well as "detailed, semi-skilled tasks (but not complex tasks)." Thus, the claimant "require[d] a task-oriented job which [did] not involve interaction with the general public." (Tr. 18). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, housekeeping cleaner, conveyor line bakery worker, and flagger (Tr. 25).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence; (ii) by finding he had the RFC to perform substantial gainful activity; and (iii) by failing to properly evaluate his credibility. The Court finds the claimant's first contention dispositive.

The record reveals that the claimant was treated by Dr. John Falsarella, M.D., for his anxiety and depression, *inter alia*, over several years. Dr. Falsarella's treatment of the claimant primarily consisted of prescribing him Zoloft, Klonopin, and Prozac (Tr. 140-54,

226-27, 317-75). The claimant also received treatment and participated in group counseling at Mental Health Services of Southern Oklahoma on several occasions between June 2003 and October 2006. For example, in July 2003, the claimant was assessed with general anxiety disorder, major depression (recurrent with psychosis), problems with his social environment, and assigned a GAF score of 60 (Tr. 174, 185-86). The client assessment record showed that the claimant suffered from anxiety and some irritability on a daily basis, but his memory was good and insight was fair. He socialized with his family and was not able to work because of his hand injury and anxiety attacks (Tr. 176-77). By February 2004, the claimant's anxiety and irritability still occurred on a daily basis, but it had lessened in severity. He was, however, still unable to work because of his hand injury and anxiety attacks (Tr. 175, 178-79). In May 2004, the claimant complained of problems sleeping which his counselor related to his therapy and memories of his abusive childhood (Tr. 251). The claimant was noted to be doing better in August 2004 and had developed healthy coping skills. However, he reported anxiety four out of seven days a week, some slight strain in his relationships with extended family, and was noted to not be able to work (Tr. 245-47). By March 2005, the claimant still was described as suffering from "[s]evere anxiety with frequent panic attacks which prevents him from being able to hold down a job or even being able to drive himself to a job." He also reportedly experienced "[d]epression, obsessive thoughts, paranoia, and auditory hallucinations." He felt anxious four to five days a week, experienced mild depression two days per week even when taking his medication, and had panic attacks five days per week. He was assessed with generalized anxiety disorder with

panic attacks, major depressive disorder (recurrent, severe with psychotic symptoms) and a current GAF score of 55 (Tr. 235-39). In June 2005, the claimant reported that his depression remained the same, but his anxiety seemed better. He was able to drive short distances by himself without experiencing panic attacks (Tr. 229). In the client assessment record from November 2005, the claimant was noted to be unable to work because of "high anxiety, paranoia, trust issues, [and a] fear of driving that results in panic attacks when getting into any type of vehicle[.]" (Tr. 487). He was assessed with major depressive disorder with psychotic features, PTSD, obsessive compulsive disorder (OCD), panic disorder with agoraphobia, and a current GAF score of 40 (Tr. 483). The claimant reported feeling somewhat better in both February and June 2006 (Tr. 471, 478), but by October 2006 he was upset, tearful, and depressed (Tr. 467).

The claimant also underwent two mental status evaluations with consulting psychologists. The first examination was with M. Gerald Ball, Ph.D, in April 2004. The claimant complained of "[d]epression, schizophrenia, PTSD, OCD, acute anxiety." He also described symptoms of anxiety, hearing voices, obsessive compulsive behavior, and depression, but he indicated that his symptoms had improved somewhat with his medication. The claimant's PTSD was associated with the seven car accidents he had been involved in and from fears of his abusive father. Upon examination, the claimant's cognitive abilities appeared to be intact. Dr. Ball assessed the claimant with major depression (recurrent and severe with psychotic features), OCD, and a GAF score of 47 (Tr. 159-62). The second examination was with Annette Miles, Ph.D., in July 2006. The claimant complained of not

being able to work because of panic attacks and hearing voices. He suffered from low energy when depressed and had lost weight since taking his medications. Upon examination, Dr. Miles noted that when performing a recall memory task, she did not believe the claimant gave his best effort. She indicated that malingering, panic disorder with agoraphobia and dysthymic disorder (early onset) needed to be ruled out. She assigned the claimant a GAF score of 51 (Tr. 310-12). Dr. Miles also completed a mental medical source statement wherein she determined that the claimant had moderate limitations with interacting appropriately with the public, supervisors, and co-workers and responding appropriately to changes in a routine work setting. She also found the claimant had marked limitations in responding appropriately to work pressures in a usual work setting (Tr. 313-15).

The ALJ determined that the claimant had severe mental impairments of generalized anxiety disorder, depression, and panic attacks (Tr. 17). He discussed some of the treatment records related to the claimant's anxiety and depression from Dr. Falsarella (Tr. 20-21), treatment the claimant received from Mental Health Services of Southern Oklahoma (Tr. 21, 22), and the mental evaluations by consulting psychologists Dr. Ball and Dr. Miles (Tr. 21-22). The ALJ then concluded that the claimant had the physical RFC to perform light work and his mental RFC was limited to the performance of "simple, routine, unskilled tasks [and] detailed, semi-skilled tasks (but not complex tasks)." The claimant "require[d] a task-oriented job which [did] not involve interaction with the general public." The ALJ indicated that this assessment was based on all of the evidence (Tr. 18).

The ALJ's analysis of the claimant's RFC was deficient for three reasons. First, the ALJ failed to discuss the opinions from his physician and counselors at the Mental Health Services of Southern Oklahoma that the claimant could no longer work (Tr. 177, 179, 247, 236, 487). Although the decision of whether a claimant can work is reserved to the Commissioner, the ALJ may not disregard evidence which suggests that a claimant cannot work. *See Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) (noting that an ALJ "'is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.'")[unpublished opinion], *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. *See also Ramirez v. Astrue*, 255 Fed. Appx. 327, 333 (10th Cir. 2007) ("Although the issue of whether Mr. Ramirez was able to work is an issue reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1), the controlling rules nonetheless 'provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2.

Second, the ALJ noted a GAF score of 60 assigned to the claimant by the Mental Health Services of Southern Oklahoma in June 2003 and a score of 51 assigned to the claimant by Dr. Miles in July 2006. The ALJ did not, however, mention the GAF score of 47 assigned by Dr. Ball in April 2004 or the GAF scores of 55 (March 2005) and 40 (November 2005) the claimant was assigned at Mental Health Services of Southern

Oklahoma. In particular, the GAF scores below 50 were clearly at odds with the more moderate scores discussed by the ALJ in the decision. *See, e. g., Salazar v. Barnhart*, 180 Fed. Appx. 39, 48 n.4 (10th Cir. 2006) ("A GAF of 31-40 is extremely low, and indicates [s]ome impairment in reality testing or communication . . . [or] major impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.") [quotation omitted] [unpublished opinion]; *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).") [quotation omitted] [unpublished opinion]. *Compare Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) ("A GAF score of 51-60 indicates moderate symptoms, such as flat affect, or moderate difficulty in social or occupational functioning.") [quotation omitted]. At a minimum, the ALJ should have explained why he rejected the lower GAF scores. *See, e. g., Berryhill v. Barnhart*, 64 Fed. Appx. 196, 200 (10th Cir. 2003) (finding it was error when the ALJ discussed a GAF score of 60, but failed to discuss several scores that were 50 or less) [unpublished opinion]; *Oslin v. Barnhart*, 69 Fed. Appx. 942, 946-47 (10th Cir. 2003) (finding it was error when the ALJ failed to discuss GAF scores ranging from 45 to 55 when it was indicated that the claimant could not work because of his impairments) [unpublished opinion].

Third, the ALJ discussed the claimant's examination findings from by Dr. Miles, primarily noting that she believed the claimant was not giving his best effort and was

possibly malingering (Tr. 22). However, the ALJ made no mention at all of the mental medical source statement completed by Dr. Miles, and more importantly of her findings that were inconsistent with his RFC determination, *i.e.*, that the claimant had *moderate* limitations in interacting with supervisors and co-workers and *marked* restrictions in responding appropriately to work pressures in a usual work setting. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others.").

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to rely only upon the evidence that supported a finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d

1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Consequently, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 20th day of November, 2008.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**